COUNTY OF HUDSON, A BODY POLITIC AND CORPORATE IN LAW, RELATOR, v. HOMER C. ZINK, STATE COMMISSIONER OF TAXATION AND FINANCE, AND ROBERT C. HENDRICKSON, STATE TREASURER, DEFENDANTS.

STATE OF NEW JERSEY, RELATOR, v. FRANK J. FARLEY, TREASURER OF THE COUNTY OF HUDSON, RESPONDENT.

Submitted November 25, 1946—Decided December 3, 1946.

Before Justices BODINE, PERSKIE and WACHENFELD.

For the County of Hudson and Frank J. Farley, *Daniel T. O'Regan* and *Frank G. Schlosser*.

For the State of New Jersey, Homer C. Zink and Robert C. Hendrickson, *Walter D. Van Riper* and *John W. Griggs*.

The opinion of the court was delivered by

BODINE, J. These are companion cases.

In No. 269, there was an alternative writ of *mandamus* directed to the state officers named with respect to the payment of $51,964.52, the current balance of state aid due to the County of Hudson for principal and interest requirements on its road bonds under *Pamph. L.* 1945, *ch.* 52. The return alleges, in substance, the following:

1. The office of Prosecutor of the Pleas in the County of Hudson was vacant from February 4th, 1944, to April 30th,

1945, and Walter D. Van Riper as Attorney-General of the State of New Jersey administered the office.

2. In the conduct of the office, the Attorney-General did incur expenses for investigation, clerical and other assistants in the sum of $51,964.52, which was paid by the State of New Jersey.

3. In conformity with the provisions of the statute (*R. S.* 52:17A–5) there was presented to the then President Judge of the Court of Common Pleas, a statement of the expenditures, and the judge by his order dated February 20th, 1946, as amended by his order dated April 17th, 1946, approved the same and ordered Frank J. Farley, treasurer of the county, to pay the money.

4. Notwithstanding the provisions of *R. S.* 52:17A–5 and the order of the President Judge, the treasurer of the County of Hudson refused the money then due to the state.

5. Thereafter, there became payable to the County of Hudson from certain highway funds the sum of $100,700. Respondents forwarded to the treasurer of the County of Hudson the sum of $48,735.48 and withheld the sum of $51,964.52 being the amount due to the state as aforestated from the County of Hudson.

6. Respondents are ready to pay to the County of Hudson the sum of $51,964.52, upon the receipt by the State from the County of Hudson of the sum of $51,964.52 due to the state under the provisions of *R. S.* 52:17A.

In No. 270, the state sought to compel the treasurer of the County of Hudson to pay the money claimed by the state under the circumstances recited in its return to the alternative writ in 269.

The pertinent provisions of the statute under which the procedure was taken is *R. S.* 52:17A–5 as follows: "Whenever the criminal business or any part of the criminal business of any county is prosecuted by the Attorney-General, personally or by his deputies or assistants, there shall be paid, by the treasurer of the county, such sum for that special service as the Justice of the Supreme Court of that judicial district or a judge of the court of common pleas of said county shall certify and fix, on the application of the Attorney

General; provided, that the compensation allowed shall not exceed that provided by law for the payment of the prosecutor in said county for the same or similar services; provided, however, that no compensation so allowed shall affect the salary of the prosecutor or assistant prosecutors if any in said county.

"In prosecuting such criminal business, the Attorney General shall have power to employ such investigators, clerical and other assistants and to incur such expenses as he shall determine, and the cost thereof, including the compensation allowed as aforesaid of any deputy or assistant attorneys-general who shall be employed or designated by the Attorney General for that special purpose in addition to those regularly employed in the Department of Law, shall likewise be paid by the treasurer of the county when certified and fixed in the same manner."

It is perfectly clear therefrom that when the certificate was made as indicated that the duty existed upon the Board of Freeholders of Hudson County to appropriate the money required by the certificate. This they failed to do. Hence, *mandamus* lies. *Vanderpool* v. *Mount Ephraim*, 111 *N. J. L.* 423. The question as to whether the writ should go against the county or the county treasurer seems unnecessary. The county counsel appeared in court and such appearance must be regarded as general for the county.

It is argued that the county judge was without lawful authority to order the payment of an unitemized bill. The statute which was his authority for so doing speaks of a certificate by the Attorney-General as the basis for the court order. It is claimed that the procedure should have been under *R. S.* 40:5–1, but such has not been the rule. The latter statute controls. *Ackley* v. *Norcross*, 122 *N. J. L.* 569.

See, also, *Irving* v. *Applegate*, 49 *N. J. L.* 376; *Lindabury* v. *Freeholders of Ocean*, 47 *Id.* 417. It is stated in the county's brief that in those cases the bills were itemized. Such does not appear in the reports. The statute 52:17a–5 and its predecessors were intended to furnish a method for the payment of bills incurred by the Attorney-General under the circumstances recited in this case. When bills are certi-

fied by the Attorney-General and approved by the court under similar statutes they have been paid for many years as a matter of course. To require itemization would, in many instances, defeat the enforcement of the criminal laws to the injury of the public.

It is finally contended that the Attorney-General has more than exhausted the provisions made by .the Freeholders for the prosecution of crime. If such be the fact, the county must include in its coming budget sufficient money to take care of the situation. In the meantime, since the county is in debt to the state it comes with poor grace to seek to compel the payment of money in an amount equal to that which it owes the state. When the county finds some means to satisfy the state's claim, the state officers mentioned in case 269 will undoubtedly carry out their promise, as made in their return, which makes it unnecessary for us to consider the questions raised in that case.

In No. 270, there will be a direction to the County of Hudson to either pay the bill of the state forthwith, or if it cannot with propriety so do, to provide sufficient money for its payment in its budget presently to be made.

The argument is made by the relator under two headings as follows:

1. Can the executive department of the state government lawfully seize and divert to other uses a fund which the legislative department of the government has dedicated to the counties with provision that the fund be used for highway purposes and no other? 2. Can municipal funds be subjected to set-off or counter-claim, in view of the decision of our court of last resort that such public funds are not so subject? *Piscataway Township* v. *First National Bank of Dunellen,* 111 *N. J. L.* 412.

We have purposely not answered these questions because we regard them as unnecessary of answer under the facts as developed in the two cases above recited.

Costs will not be awarded in these cases since the litigation seems due to an unseemly lack of co-operation between state and county officers.